UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY W.,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL, Commissioner of Social Security Administration,<br><br>    Defendant. | Case No. CV 18-5228-SP<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**<u>INTRODUCTION</u>**

  On June 13, 2018, plaintiff Kimberly W. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

  Plaintiff presents two disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered the opinion of the

examining psychiatrist; and (2) whether the ALJ properly considered the opinion of a physician assistant. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-14; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 6-16.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the opinion of the examining psychiatrist but failed to properly consider the opinion of the physician assistant. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 41 years old on her alleged disability onset date, and has a high school education and medical assistant certificate. AR at 57, 168. Plaintiff has past relevant work as a medical biller and medical receptionist. *Id*. at 52.

On January 14, 2015, plaintiff filed an application for a period of disability and DIB due to depression, muscle spasms, nerve pain, fibromyalgia, chronic lower back pain, neuropathy, chronic fatigue, anxiety, stenosis, and panic attacks. *Id*. at 57-58. The application was denied initially, after which plaintiff filed a request for a hearing. *Id*. at 75-83.

On January 4, 2017, plaintiff appeared and testified at a hearing before the ALJ. *Id*. at 33-56. The ALJ also heard testimony from Elizabeth G. Brown-Ramos, a vocational expert. *Id*. at 51-54. On April 7, 2017, the ALJ denied plaintiff's claim for benefits. *Id*. at 15-28.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since November 18, 2013, the alleged onset date. *Id*. at 17.

At step two, the ALJ found plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine; chronic pain syndrome; myofascial pain syndrome; depressive disorder; anxiety disorder; sensory neuropathy involving the bilateral lower extremities; nerve root compression; obesity; fibromyalgia; and substance abuse disorder. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined plaintiff had the RFC to perform light work, with the limitations that plaintiff could: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for a combined total of six hours out of an eight-hour workday; sit for six hours out of an eight-hour workday; occasionally push and pull with the lower extremities, climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds. *Id*. at 20. The ALJ also determined plaintiff was limited to simple instructions and one- to two-step tasks, was able to interact appropriately with supervisors, and should interact with the public and co-workers only occasionally. *Id*.

The ALJ found, at step four, that plaintiff was incapable of performing her past relevant work as a medical biller and medical receptionist. *Id*. at 26.

At step five, the ALJ found that given plaintiff's age, education, work

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including bench assembler, garment bagger, and cleaner/polisher. *Id*. at 26-27. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 28.

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be

affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## DISCUSSION

### A. The ALJ Properly Considered the Opinion of the Examining Psychiatrist

Plaintiff argues the ALJ failed to properly consider the opinion of the consultative psychiatrist, Dr. Ijeoma Ijeaku. P. Mem. at 4-9. Specifically, she argues the ALJ failed to provide specific and legitimate reasons for discounting Dr. Ijeaku's opinion. *Id*.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b).[2] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to

---

[2] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

5

understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (*citing Lester*, 81 F.3d at 830-31). "Where such an opinion is contradicted, however, it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Id.* (quoting *Lester*, 81 F.3d at 830-31). The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *Lester*, 81 F.3d at 831.

### 1. Medical Opinions and History

Dr. Ijeoma Ijeaku, a psychiatrist, examined plaintiff on May 16, 2015, but did not review any medical records. AR at 401-06. Plaintiff reported to Dr. Ijeaku that she briefly sought psychiatric treatment about five years prior, but discontinued that care and received her medications from her primary care provider. *Id.* at 401-02. Dr. Ijeaku observed plaintiff, among other things: had normal speech; had a depressed mood; had a tearful affect; had a goal directed thought process; was distractible; had no delusions; was able to perform serial threes but not serial sevens; was able to recall three out of three objects after five minutes; and had fair judgment. *See id.* at 404-05. Based on plaintiff's history and the mental status examination, Dr. Ijeaku diagnosed plaintiff with major depressive disorder without psychotic features, and with anxiety disorder not otherwise specified. *Id.* at 405. Dr. Ijeaku opined plaintiff was moderately limited in her ability to understand, remember, and carry out simple instructions. *Id.* Dr. Ijeaku further opined plaintiff was markedly limited in her ability to do all of the following: understand, remember, and carry out complex instructions; maintain concentration, attendance, and persistence; perform activities within a schedule and

maintain regular attendance; complete a normal work week without interruptions from psychiatric symptoms; and respond appropriately to changes in a work setting. *Id.*

Dr. Nadine J. Genece, a state agency psychologist, reviewed plaintiff's medical records and Dr. Ijeaku's opinion. *Id* at 62-63. Based on her review, Dr. Genece determined Dr. Ijeaku's opined limitations were too restrictive given the findings from the mental status examination and record. *Id.* at 63. Dr. Genece opined plaintiff only had mild to moderate limitations. *See id.* Specifically, Dr. Genece determined plaintiff was moderately limited in her ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration; work in coordination with and in proximity with others without being distracted; complete a normal workday and workweek and perform at a consistent pace; interact appropriately with the general public; get along with coworkers and peers; and respond appropriately to changes in the work environment. *Id.* at 67-68. Dr. Genece clarified that despite the moderate limitations, plaintiff was able to carry out simple instructions and could sustain concentration and persistence for simple tasks over a normal workweek. *Id.* at 67. In all other respects, plaintiff was not significantly limited. *See id.* at 67-68.

Other than for about five sessions in 2010, 2013, or 2014, plaintiff did not seek psychiatric treatment.[3] *See id.* at 42-43, 401-02. Instead, plaintiff's primary care physician prescribed her her psychiatric medications. *See id.* at 42, 402. On four occasions in 2014, a physician assistant observed plaintiff was teary, had a flat

---

[3] Because plaintiff did not submit her psychiatric treatment records, this court cannot determine when plaintiff sought psychiatric treatment. Plaintiff provided different dates at her consultative examination and the hearing. *Compare* AR at 42-43, 401-02. Further, in a January 2015 treatment note, a treating physician reported plaintiff was seeing a psychiatrist, but this was inconsistent with plaintiff's statements at the hearing and to the consultative examiner. *See id.* at 319.

7

affect, or needed to pause to recover her train of thought. *See id*. at 310, 339, 348, 351. Plaintiff also complained about feeling depressed and being unable to concentrate in 2014. *See, e.g., id*. at 339. On all other occasions, including throughout 2015 and 2016, plaintiff had normal findings during her mental status examinations. *See, e.g., id*. at 342, 450-51, 456, 467, 488, 498.

## 2. The ALJ's Findings

The ALJ determined plaintiff had the RFC, in relevant part to: perform work with simple instructions and one- to two-step tasks; interact appropriately with supervisors; and have occasional interactions with the public and co-workers. *Id*. at 20. In reaching this RFC determination, the ALJ gave great weight to the opinion of Dr. Genece and little weight to Dr. Ijeaku's opinion.[4] *Id*. at 24-25.

The ALJ provided three reasons he gave little weight to Dr. Ijeaku's opinion: (1) it was inconsistent with the medical record; (2) Dr. Genece reported there was no evidence of memory impairment or psychosis; and (3) Dr. Genece noted there was no evidence of delusions. *Id*. at 25. All of these fall under the overarching reason – inconsistency with the medical record, which was a specific and legitimate reason. *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that an ALJ may discredit physicians' opinions that are "unsupported by the record as a whole . . . or by objective medical findings"); *Tonapetyan*, 242 F.3d at 1149 (rejecting physician's opinion, in part, due to a lack of objective evidence to support it).

As to the first reason given, other than findings of some psychiatric symptoms on five occasions, the overwhelming majority of plaintiff's treatment

---

[4] In his decision, the ALJ mistakenly refers to Dr. Ijeoma Ijeaku as Dr. Ijeoma I. Jeaku. *See* AR at 23, 25.

8

records reflect she had normal findings during her mental status examinations.[5] *See, e.g.,* AR at 310, 339, 342, 348, 351, 450-51, 456, 467, 488, 498. Indeed, plaintiff had no abnormal findings after the consultative examination. *See, e.g.*, *id.* at 447, 450-51, 493. Thus, the record did not support Dr. Ijeaku's opined limitations.

The ALJ's second reason for giving Dr. Ijeaku's opinion less weight was because Dr. Genece determined there was no evidence of memory impairment or psychosis. *Id.* at 25. With regard to memory impairment, plaintiff cites to one instance in which plaintiff had some pauses in her speech. *Id.* at 348. Having "some pauses" in speech on one occasion is not an indication of memory impairment. As for the lack of evidence of psychosis, plaintiff does not dispute there was no evidence in the record but instead contests the legitimacy of the reason. While evidence of psychosis is not required for a disability finding, the lack of it was a relevant factor for Dr. Genece to consider when determining the extent of plaintiff's limitations. Further, given Dr. Ijeaku's findings of marked limitations in multiple areas, the lack of evidence of memory impairment or psychosis in the record was a specific and legitimate reason to discount Dr. Ijeaku's opinion.

Similarly, the ALJ properly relied on the fact that Dr. Genece determined there was no evidence of delusions in the record. Again, while plaintiff did not allege she suffered from delusions, the fact that there was no evidence of delusions was relevant to Dr. Genece's opinion, and undermined the severe limitations Dr. Ijeaku opined.

Accordingly, the ALJ properly considered and rejected Dr. Ijeaku's opinion. The ALJ provided specific and legitimate reasons supported by substantial

---

[5] Despite the ALJ's request that plaintiff submit her psychiatric records, plaintiff failed to do so. *See* AR at 54-55.

evidence for discounting the opinion.

**B.     The ALJ Failed to Properly Consider the Physician Assistant's Opinion**

Plaintiff contends the ALJ failed to properly evaluate the opinion of Andrea Douglas, a physician assistant. P. Mem. at 9-14. Specifically, plaintiff argues. Douglas qualified as a treating source and the ALJ was therefore required to give specific and legitimate reasons for rejecting any portion of her opinion. *Id*. at 11-13. In the alternative, plaintiff contends even if Douglas's opinion constituted a lay opinion, the ALJ still erred because he rejected certain of her opined limitations without comment. *Id*. at 13-14.

The social security regulations require an ALJ to consider all medical source information, but distinguish between opinions from "acceptable medical sources" and those from "other sources." *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996) (superseded by regulation on other grounds). A physician assistant is an "other" source. *See* 20 C.F.R. § 404.1513(d)(1). As such, as with lay testimony, the ALJ only has to provide a germane reason for discounting the opinion of an other source. *See Delegans v. Berryhill*, 766 Fed. Appx. 477, 481 (9th Cir. 2019) (an ALJ need only give a germane reason for discounting the opinion of an other source). *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (same). Although the ALJ may give the opinion of an other source less weight than the opinion of an acceptable medical source, he cannot disregard it without comment. *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); *see also Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (an ALJ may not disregard lay testimony without comment).

Douglas was a physician assistant at the practice of plaintiff's primary care provider, Dr. Cynthia Stuart. *See, e.g.,* AR at 334-40. From at least November 2013 through at least October 2016, plaintiff was primarily treated by Douglas. *See, e.g., id*. at 334-42, 427-29. Dr. Stuart co-signed each treatment note. *See,*

*e.g., id.* On December 18, 2015, Douglas completed an opinion form regarding plaintiff's functional liabilities. *Id.* at 407-09. Douglas opined, among other things, that plaintiff: could lift and carry 20 pounds occasionally and 10 pounds frequently; could stand and walk two hours in an eight-hour workday; was able to sit for six hours in an eight-hour workday; needed the option to shift from standing to sitting at will; and could never twist or climb ladders. *Id.* at 407-08. Dr. Stuart did not co-sign the opinion. *See id.* at 409.

Recognizing Douglas constituted an other source, the ALJ nevertheless stated he gave great weight to Douglas's opinion because it was consistent with the medical record as a whole. *Id.* at 25. The ALJ specifically noted the record indicated plaintiff consistently had normal range of motion in her upper and lower extremities, normal muscle bulk without atrophy, and full motor strength. *Id.* As both plaintiff and defendant acknowledge, contrary to the ALJ's assertion, these cited findings appear to support *rejecting* Douglas's standing and walking, shifting at will, and twisting limitations. *See* P. Mem. at 12; D. Mem. at 14.

Despite purportedly giving Douglas's opinion great weight, the ALJ did not fully adopt her opined limitations. Instead, the ALJ incorporated all of consultative examiner Dr. Seong Ha Lim's opined limitations, whose opinion he also gave great weight, and only some of Douglas's.[6] *See id.* at 24. Therefore, contrary to the great weight purportedly given to Douglas's opinion, the ALJ's RFC determination implicitly rejected Douglas's opinions concerning plaintiff's standing and walking limitations, need to be able to shift from standing to sitting at will, and inability to twist.

---

[6] Dr Lim examined plaintiff on April 22, 2015. AR at 388. Dr. Lim opined plaintiff could stand and walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; lift and carry 20 pounds occasionally and 10 pounds frequently; push and pull occasionally with the feet; and climb, crouch, and stoop occasionally. *Id.* at 391.

11

As an initial matter, the ALJ correctly treated Douglas as an other source. Plaintiff contends Douglas qualified as a treating source because she worked in conjunction with plaintiff's primary care provider, Dr. Cynthia Stuart. P. Mem. at 11. In *Gomez*, the Ninth Circuit, relying in part on 20 C.F.R. § 416.913(a)(6)[7], held that other sources who work under the close supervision of an acceptable medical source could be considered an agent of the physician. 74 F.3d at 970-71. After the regulations were revised in 2000, the Ninth Circuit has declined to decide whether *Gomez* is still good law. *Colburn v. Berryhill*, 694 Fed. Appx. 582, 583 (9th Cir. 2017). Even assuming *Gomez* is still good law, the ALJ correctly determined Douglas was an other source. There is nothing in the record that indicates Douglas worked under the close supervision of Dr. Stuart. Although Dr. Stuart co-signed Douglas's treatment notes, a signature alone is insufficient to show a close working relationship that would transform Douglas into an acceptable source. *See, e.g.*, *Davis v. Astrue*, 2012 WL 3011223, at *16 (N.D. Cal., Jul. 23, 2012) (an other source "is not transformed into an 'acceptable medical source' merely because he or she is supervised to any degree by a physician"); *Ramirez v. Astrue*, 803 F. Supp. 2d 1075, 1082 (C.D. Cal. 2011) (physician's signature on report prepared by a social worker did not establish that the social worker worked under the physician's close supervision); *Garcia v. Astrue*, 2011 WL 3875483, at *15 (E.D. Cal. Sept. 1, 2011) (physician's signature on reports "does not transform the reports into evidence from an 'acceptable medical source'"). Moreover, Dr. Stuart did not sign Douglas's opinion. *See Davis*, 2012 WL 3011223, at *16 (the fact that doctor did not sign nurse's opinion was an indication that the nurse did not work under the doctor's close supervision). The ALJ therefore properly treated

---

[7] "A report of an interdisciplinary team that contains the evaluation and signature of an acceptable medical source is also considered acceptable medical evidence." *Gomez*, 74 F.3d at 971 (quoting 20 C.F.R. § 416.913(a)(6)).

12

Douglas as an other source.

Nevertheless, the ALJ erred. The ALJ expressly stated he afforded great weight to Douglas's opinion, but did not incorporate all of the opined limitations in his RFC determination. Although an "ALJ is entitled to give greater weight to opinions from 'acceptable medical sources,'" here Dr. Lim, and is not required to adopt an opinion in its entirety, he still must consider the opinions of an other source and provide germane reasons for rejecting the opinion or portions thereof. *Hubble v. Astrue*, 467 Fed. Appx. 675, 677 (9th Cir. 2012); *see Carmickle*, 533 F.3d at 1165; *Magallanes*, 881 F.2d at 753. The ALJ failed to provide any reason for rejecting any part of Douglas's opinion here.

As discussed above, the ALJ arguably listed a reason that could have been cited as a basis to reject Douglas's standing, shifting, and twisting opinions, namely, contrary medical evidence. But the ALJ expressly stated he gave Douglas's opinion great weight and listed the medical findings as a basis of support. Indeed, he stated Douglas's opinion was "consistent with the record as a whole." AR at 25. It may be the ALJ intended to expressly reject portions of Douglas's opinion, but he did not state this. This court will not engage in conjecture as to the ALJ's true intent.

Accordingly, the ALJ erred because he failed to provide a germane reason for rejecting portions of Douglas's opinion.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful

purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, there are outstanding issues to be resolved and remand is required. On remand, the ALJ shall reconsider physician assistant Andrea Douglas's opined limitations, and either credit her opinions or provide germane reasons supported by substantial evidence for rejecting them. The ALJ shall then reassess plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff was capable of performing.

//

//

//

# VI.
# CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: September 30, 2019

SHERI PYM
United States Magistrate Judge